**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | | |
|---|---|---|
| AARON NEWMAN, | : | **COMPLAINT** |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| MANAGED LABOR SOLUTIONS, | : | |
| and JOHN DOES I-V, | : | Civil No.: |
| | : | |
| Defendants. | : | Judge |

Aaron Newman, Plaintiff herein, complains of Managed Labor Solutions, (hereinafter "MLS") and John Does I-V, Defendants herein, demands trial by jury and as and for causes of action against Defendants, alleges as follows:

### PARTIES

1.     Plaintiff Aaron Newman (hereinafter referred to as "Mr. Newman") is an individual who resides in the State of Utah.

2.     On information and belief, Defendant Managed Labor Solutions (hereinafter "MLS"), is an entity doing business in the State of Utah, with a principal

place of business in the State of Utah at _____, and a registered agent in the State of Utah at _____, upon whom civil process may be served.

3. Plaintiff alleges that, at all times relevant herein, MLS employed him as an employee.

4. John Does I-V are individuals.  On information and belief, Plaintiff alleges John Does I-V are the owner and/or officers of MLS.

5. Plaintiff alleges that, at all times relevant herein during his employment with MLS, John Does I-V, exercised operational control over MLSand, at all times relevant herein, acted directly and indirectly in the interest of MLS in regards to Plaintiff's employment.

6. Accordingly, Plaintiff alleges that each of John Does I-V acted as an "employer" in regards to Plaintiff within the meaning of the Fair Labor Standards Act ("FLSA") and each is subject to personal liability to Plaintiff under the FLSA.

## JURISDICTION AND VENUE

7. Plaintiff alleges that during his employment with MLS, MLS and John Does I-V violated his rights under the federal Fair Labor Standards Act of 1938, 29 U.S.C. §201, et. seq., in that he worked over 40 hours a week on a regular basis, but was not paid wages at the overtime rate or even at his regular rate for the hours over 40

hours a week which he worked.  Thus, Plaintiff brings this action to recover earned but unpaid overtime compensation, liquidated damages, attorney's fees and costs, and other appropriate relief under the provisions of the federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et. seq. (hereinafter referred to as "FLSA".) Jurisdiction is proper under 28 U.S.C. § 1331 (federal question).  Venue is proper under 28 U.S.C. § 1391 because the Defendants reside in the federal district of Utah, or otherwise may be found within the federal district of Utah and the causes of action alleged herein occurred within the federal district of Utah.

## STATEMENT OF FACTS

8.     On information and belief, Plaintiff alleges that at all times material hereto, MLS was an "enterprise engaged in commerce" as that term is defined in 29 U.S.C. § 203 and, therefore, or otherwise, subject to the FLSA.

9.     Plaintiff alleges he began working for MLS in early August 2017.

10.     At all times relevant hereto, MLS employed Plaintiff as an employee on the basis of a mutual understanding and agreement whereby Plaintiff agreed to work for MLS, and MLS agreed to compensate Plaintiff in compliance with the FLSA and all other applicable federal, state and local laws and regulations.

11.    Ostensibly, Plaintiff's position was that of lead supervisor, but, in reality, he had no authority and worked as a glorified foreman of a crew.  MLS paid him at the rate of $14.00 per hour.

12.    Plaintiff alleges he was not an independent contractor under the applicable Internal Revenue Code, Utah State Tax Commission, Utah Labor Commission and Utah Department of Workforce Services laws, regulations and rules, but, rather, was a bona fide, true, W-2 status, employee.

13.    On information and belief, Plaintiff alleges he did not perform the duties of and MLS did not treat him as an administrative, executive or professional employee, as those terms are defined in the FLSA statute and regulations.

14.    Plaintiff was not a highly paid employee, he did not have authority to hire and fire any employees, he did not have authority to make decisions regarding company objectives or strategy, he did not have authority to make decisions regarding hours, pay or discipline of any employees and was expected to work a regular work schedule every work day during the work week.

15.    By reason of such employment, Plaintiff was employed by an enterprise engaged in commerce, within the meaning of the FLSA and, therefore, or otherwise, entitled to the coverage, protections and benefits of the FLSA.

16.     Thus, Plaintiff alleges he was a non-exempt employee and that the coverage scheme of the FLSA did not otherwise exempt him from entitlement to overtime compensation for any hours or parts of hours he worked over 40 hours a week.

17.     Plaintiff alleges that, at all times relevant hereto, MLS assigned him to work for Advantage Rent A Car at the Advantage Rent A Car site near the Salt Lake City International Airport.

18.     Starting in about the end of August 2017, James Murray, the General Manager of Advantage Rent A Car, approached Plaintiff and requested Plaintiff to wash the towels used to clean and ready rental cars.  Plaintiff agreed to do so.

19.     On information and belief, Plaintiff alleges Manny Martinez, his manager with MLS, was aware of Mr. Murray's request to Plaintiff and Plaintiff's agreement thereto and approved the same.

20.     Thereafter, beginning on September 1, 2017, Mr. Newman personally spent many hours after regular work hours had ended, at night, on the weekends and at other times, washing these towels.

21.     Mr. Newman asserts that all of such time spent washing and drying these towels, as well as transporting such towels, was work time.  This washing

and drying of towels added several hours a week above and beyond the 40 hours per week he regularly worked.

22.     Mr. Newman washed these towels at his own residence.  Spending his own money for detergent, electricity and wear and tear on his personal washing machine and dryer.

23.     On information and belief, Plaintiff alleges that, when MLS hired Jeff Lins in approximately October 2017 to work as the account manager with responsibility to manage the Advantage Rent A Car account, Mr. Lins also became aware of what Mr. Newman was doing and approved of it.

24.     Thus, after employing Plaintiff on the basis set forth above, MLS knowingly requested, required, suffered and/or permitted Plaintiff to work hours in excess of 40 hours per week.

25.     At all times relevant herein, Plaintiff regularly worked 10 to 20 hours or more hours per work week above and in addition to the 40 hours per week he was regularly working.

26.     Plaintiff alleges he typically worked between 7 to 9 hours during a work day, not counting the time spent washing and drying the towels.  Plaintiff recorded his hours worked on a daily basis.

6

27.     Plaintiff kept track of his work hours, by filling out and turning in daily sheets to MLS's payroll person or taking pictures and e-mailing his hours to Human Resources.  Plaintiff's records documenting the hours he worked were accurate and in accordance with the actual hours he worked.  Plaintiff has attached a log showing such hours, which is attached hereto as Exhibit 1.

28.     For such hours worked over 40 hours per work week, Plaintiff earned and MLS should have paid Plaintiff, time-and-a-half overtime wages or the equivalent of overtime wages or any wages at all for all hours he worked washing and drying towels over 40 hours per work week, but MLS did not pay Plaintiff any amount of wages for such work.

29.     Thus, Plaintiff alleges that, beginning on and after September 1, 2017, MLS knowingly required, suffered and/or permitted Plaintiff to work hours well in excess of 40 hours per week, but failed to pay Plaintiff overtime wages or the equivalent of overtime wages or any wages at all for any and all of the hours in excess of 40 hours per work week he worked.

30.     In addition, Plaintiff alleges that, from time to time during the course of Plaintiff's employment with MLS, Plaintiff raised concerns with MLS about being required to work many hours in excess of 40 hours per work week without getting paid overtime wages or the equivalent of overtime wages or any wages for such

hours in excess of 40 hours per work week.  Plaintiff alleges that, by so doing, he

engaged in protected activity, as that phrase is used in FLSA law.  When Plaintiff

would raise such concerns, Manny Martinez would tell him, "We'll figure out how to

pay you for this work".  Plaintiff kept telling Jeff Lins about what he was doing.  Jeff

Lins would tell Plaintiff, "I'm working on it".

        31.    Despite having information and knowledge of Plaintiff working

many hours in excess of 40 hours per work week without getting paid overtime wages

or the equivalent of overtime wages or any wages for such hours, and, despite Plaintiff

raising concerns and objections about working in excess of 40 hours per work week,

but not being paid overtime wages or the equivalent of overtime wages or any wages

for such hours.  MLS and John Does I-V failed and have failed to pay Plaintiff

overtime wages or the equivalent of overtime wages or any wages for any and all of the

hours in excess of 40 hours per work week which Plaintiff worked for MLS, in

violation of 29 U.S.C. §207 and 29 C.F.R. § 778.315 and 316.

        32.    Throughout September 1, 2017 through January 20, 2018, MLS

continued to require, suffer or permit Plaintiff to work overtime hours, but failed to pay

him overtime compensation for his overtime hours.

        33.    On or about January 23, 2018, Plaintiff informed MLS that, if

MLS did not pay him for the time he had spent and was spending washing and drying

8

towels, he was going to contact the appropriate government agencies and file a claim for such wages.

34.    A few days later, on January 29, 2018, MLS terminated Plaintiff's employment with MLS.  MLS gave Plaintiff no reason for the termination.

35.    Plaintiff alleges such termination constitutes a wrongful termination, which has caused him financial damages, losses and other damages.

36.    As and for causes of action against the Defendants, Plaintiff alleges as follows:

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT — PAYMENT FOR
### WASHING AND DRYING TOWELS

37.    Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 36 above as if alleged in full herein.

38.    Defendants had an arrangement with Plaintiff to pay him for washing and drying towels.

39.    Plaintiff worked the hours set forth in Exhibit 1 washing and drying towels.

40.    MLS has failed to pay him any amounts for such hours he worked.

41.    Such failure constitutes a breach of contract.

9

42.     Such breach has caused Plaintiff loss, injury and damage.

43.     MLS is liable to pay Plaintiff for the time he spent washing and drying towels.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME WAGES OR THE**
**EQUIVALENT OF OVERTIME WAGES FOR**
**OVERTIME HOURS WORKED**

44.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 43 above as if alleged in full herein.

45.     From approximately September 1, 2017 to January 20, 2018, Plaintiff worked approximately 10 to 20 or hours or more per work week for MLS.

46.     Plaintiff worked all of such hours for MLS, but Defendants did not pay Plaintiff and have not paid Plaintiff time and a half overtime wages or the equivalent of overtime wages (or any wages) for any and all of such hours worked in excess of 40 hours per work week.

47.     As alleged above, such failures to pay overtime wages or the equivalent of such overtime wages for such overtime work constitute violations of the FLSA.

48.     Plaintiff estimates the amount owing to him for earned, but unpaid overtime wages or the equivalent of overtime wages from September 1, 2017 to January 20, 2018, based on his rate of pay and the hours in excess of 40 hours per work

10

week he worked, is the sum of approximately $5,257, calculated as follows:

_____

49.    At this point in time, Plaintiff can only allege approximate amounts of overtime compensation due to him because (a) Defendants may dispute the validity of his records and estimates concerning the number of hours Plaintiff was required, suffered or permitted to work each work week in excess of 40 hours per work week for which he has not been paid overtime wages or the equivalent of overtime wages; (b) other records which may be relevant to his work hours may be in the exclusive possession and control of Defendants or may have been altered or destroyed or no longer exist or never existed; and (c) Defendants may have not kept any records on the time Plaintiff spent washing and drying towels after regular work hours at his residence.  Plaintiff hereby makes claims under the FLSA for whatever amounts of earned but unpaid overtime wages the facts and evidence as to his overtime work hours and rates of pay dictate.

50.    On information and belief, Plaintiff alleges that the facts dictate the amounts of overtime wages set forth above.

51.    On information and belief, Plaintiff alleges the failure on the part of Defendants to record the time Plaintiff spent washing and drying towels after regular hours at his residence and to pay Plaintiff overtime wages or the equivalent of overtime

wages for all of the hours he worked in excess of 40 hours per work week is

intentional, willful, reckless and/or a product of deliberate indifference, entitling

Plaintiff to claim up to three years of such earned but unpaid overtime wages and, if he

is successful in establishing entitlement to overtime wages or the equivalent of

overtime wages, to an award of an additional amount equal to the amount of overtime

wages, found due as liquidated damages under the FLSA, 29 U.S.C. §216.

   52. On information and belief, Plaintiff alleges such violations were

willful on the basis of several facts and grounds, including, but not limited to: (1)

Defendants knew, or should have known, that they needed to keep their time-keeping

and compensation practices in compliance with the FLSA and other laws and

regulations regulating the workplace; and (2) in failing to do so and to pay Plaintiff

overtime wages or any wages at all for such work, Defendants showed reckless

disregard for the requirements of FLSA and other laws and regulations regulating the

workplace; and (3) MLS is a nationwide employer with thousands of employees

working near airports around the country.  It is a large, sophisticated employer, well

aware of the need to comply with the FLSA; and (4) Plaintiff's managers

acknowledged that Plaintiff should not be doing this towel washing and drying work

for free and were aware of the need to address Plaintiff's claim, but never did so.

Thus, Plaintiff alleges that Defendants deliberately required, permitted or suffered

Plaintiff to work many hours over 40 hours per work week and required him to perform work before and after normal business hours and knew he was doing so, and that they had an obligation to pay him wages and overtime wages or the equivalent of overtime wages for such hours he worked in excess of 40 hours per week, but, nevertheless, intentionally, knowingly or recklessly, failed to keep track of his work hours and failed to pay him overtime wages or the equivalent of overtime wages (or any wages at all) for any and all of the hours in excess of 40 hours per work week he worked.

53.     Plaintiff also alleges that he engaged in protected activity, that, thereafter, Defendant terminated his employment and that there is a causal connection between his protected activity and the adverse action of termination.

54.     Plaintiff also alleges that, to pursue his claims, he has been required to hire an attorney and, if he prevails, by settlement or otherwise, such attorney will be entitled to reasonable attorney's fees and costs under the FLSA, 29 U.S.C. §216 (b).

### THIRD CAUSE OF ACTION
### ATTORNEY'S FEES

55.     Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 54 above as if alleged in full herein.

56.     In addition to attorney's fees and costs recoverable under the FLSA, Mr. Newman makes a claim for reasonable attorney fees and court costs under Utah Code § 34-27-1, in that (a) during his employment with MLS, he asked MLS to pay him what it owed him for overtime compensation; (b) he has made a written demand for payment of what MLS owes him; (c) MLS has not paid Plaintiff any of such amount; and (d) Mr. Newman has waited the requisite period of time before filing the instant civil action.

57.     Accordingly, Mr. Newman makes a claim for reasonable attorney's fees and costs under Utah Code § 34-27-1.

### PRAYER FOR RELIEF

WHEREFORE, on Plaintiff's First Cause of Action, Plaintiff prays judgment be entered against Defendant joint and severally in the amount of $5,257 for Plaintiff for hours worked but not paid.

WHEREFORE, on Plaintiff' Second Cause of Action, Plaintiff demands a trial by jury and prays that judgment be entered against Defendants, jointly and severally, together and individually, in the amount of approximately $5,257 for Plaintiff for overtime wages or the equivalent of overtime wages, or such lesser or greater amount as the facts as to the exact number of hours of overtime worked and exact rate of overtime pay, dictate, together with an additional amount, equal to the

amount of overtime wages found due, as liquidated damages, for the value of wages and benefits he has lost due to a retaliatory and wrongful termination and reasonable attorney's fees and costs, all under the provisions of the Fair Labor Standards Act of 1938, as amended, and such other legal and equitable relief as may be appropriate to effectuate the purposes of the FLSA.

WHEREFORE, on Plaintiff's Third Cause of Action, for reasonable attorney's fees and court costs.

DATED this 15th day of June, 2018.


  /s/ David J. Holdsworth_____
David J. Holdsworth
*Attorney for Plaintiff*

15

VERIFICATION

Aaron Newman, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he has read the foregoing COMPLAINT and understands the contents thereof, and the allegations made therein are true of his own knowledge, except as to those matters alleged on information and belief which he believes to be true.


   /s/ Aaron Newman                 
Aaron Newman


SUBSCRIBED AND SWORN to before me, a Notary Public, this _____ day of June, 2018.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:    RESIDING AT: _____

_____